### STORM et al. v. McGROVER et al.

(Supreme Court, Appellate Division, First Department. March 7, 1902.)

1. RESULTING TRUSTS—ESTABLISHMENT.

In a suit to have a resulting trust declared of property purchased by the committee of a lunatic, title thereto being taken in her own name, and not in the lunatic's, plaintiffs must prove that all of the consideration belonged to the lunatic, and not merely a part thereof.

2. SAME—EVIDENCE—SUFFICIENCY.

Evidence in such a suit examined, and *held* insufficient to establish that all of the consideration applied to the purchase of the property belonged to the lunatic.

8. SAME—EVIDENCE—ADMISSIBILITY.

In a suit against administrators to have a resulting trust declared of property purchased by their decedent, she having been committee for her husband, a lunatic, and having taken title in her own name, and not in his, the husband's declarations are inadmissible as against the defendants.

Appeal from special term, New York county.

Action by Theresa Storm and others against Sophie McGrover and another, individually and as administrators of Caroline Preiss, and others. Judgment for plaintiffs, and defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Robert H. Barnett, for appellants.
Eugene Cohn, for respondents.

INGRAHAM, J. The plaintiffs in this action seek to enforce a trust which they claim resulted from the purchase of certain property

in the city of New York with the money of one Charles Preiss, a lunatic, by his committee, the committee having taken the title in her own name. The interlocutory judgment determined that such a trust resulted; that the fee of the property vested in the said Charles Preiss, and the plaintiffs, as his heirs at law, are entitled thereto; and it directed the defendants, as administrators of the committee, to account for the income received therefrom. It appeared that Charles Preiss was on the 28th day of February, 1880, adjudged a lunatic, and his wife, Caroline Preiss, appointed committee of his person and estate. Subsequent to her appointment as such committee, she received the personal estate of the lunatic, and subsequently the said Caroline Preiss purchased the property in question, and received a conveyance thereof on the 20th day of January, 1883, and paid as the consideration therefor the sum of $3,950 in cash, the said property being subject to a mortgage of $5,000. The plaintiffs allege that this sum of $3,950 was the money of the lunatic, which the committee invested in the purchase of the said real estate, taking the title to herself individually and without the knowledge and consent of the said lunatic; that the said Charles Preiss died on the 10th day of April, 1899, leaving as his only heirs at law the plaintiffs Theresa Storm and Julia Brockman, his sisters, and the other plaintiffs, who were the children of a brother and sisters of the said Charles Preiss, who died before him; that Caroline Preiss, the widow of the said Charles Preiss, died on the 16th day of January, 1900, leaving, her surviving, her sisters, the defendants Sophie McGrover and Elizabeth F. Drake, her only heirs at law. The court decreed that a trust resulted in favor of the said Charles Preiss in the said land, and that the same descended to his heirs at law, the plaintiffs in this action. The court filed its decision, in which the facts found and the conclusions of law are not stated separately. Section 1022 of the Code of Civil Procedure provides that the decision, when it does not state separately the facts found, shall state concisely the grounds upon which the issues have been decided, and direct the judgment to be entered thereon. The decision in this case takes up eight pages of the printed record, and apparently, under this provision of the Code, sets forth the facts alleged by the complaint as having been found upon the trial. The defendants filed a notice that they except to the rulings of the court upon questions of law contained in its written decision, which decision fails to separately state its conclusions of law. Then follow four quotations from the decision, which are largely statements of facts to which the defendants intended to except. The exception also states that the defendants give notice that they except to certain findings of fact set forth between folios 10 and 11 of the decision, on the ground that there is no evidence to support such findings. Just what findings of fact there are between folios 10 and 11 of the decision does not appear by the record. They also excepted to other findings of fact, and then there is another statement that the defendants except to the directions for the entry of judgment, and then follow three separate quotations from the decision directing the judgment to be entered.

Section 1022 of the Code, to which attention has been called, provides that, whenever judgment is entered on a decision which does not

state separately the facts found, the defeated party may file an exception to such decision, in which case, on an appeal from the judgment entered thereon upon a case containing exceptions, the appellate division shall review all questions of fact and of law, and may either modify or affirm the judgment or order appealed from, award a new trial, or grant to either party the judgment which the facts warrant. Neither the decision nor exceptions strictly comply with this provision of the Code. The decision is not one stating the facts found and the conclusions of law separately, nor does it state concisely the grounds upon which the issues have been decided, and direct the judgment to be entered thereon. By the decision the learned trial judge first states that, "having heard the proof and the allegations of the parties, I decide as follows." He then decides that the committee of this lunatic paid the consideration for the property in question out of the money belonging to the lunatic in her hands as a committee, and that thereupon the said lunatic, by the operation of the statute, became seised of the said premises in fee simple absolute, and that upon the death of the said lunatic the estate descended to his heirs at law, the plaintiffs in this action. The decision then proceeds to state as the grounds of the decision, concisely stated, four pages of printed matter, reciting certain facts as having been proved upon the trial.

All these statements of facts as the grounds of the decision were entirely out of place. They required no notice by the defendants, and all the defendants had to do, to raise on appeal the question that had been before the special term, was simply to except to the decision as filed. This course, plainly prescribed by the statute and being perfectly simple, was not the course adopted by the defendant. He first excepts to what he calls conclusions of law. The first of these "conclusions" is a statement of certain facts which are grounds of the decision. This was that the committee of the lunatic paid the consideration for the conveyance out of the money belonging to the said Charles Preiss, then in the hands of the said Caroline Preiss as the committee of the person of the lunatic, the said Charles Preiss, and without his knowledge and consent. The three other statements excepted to would probably be conclusions of law.

It is somewhat doubtful whether these exceptions really bring up anything for review. As, however, in form the defendant excepts to all that part of the decision which really states the grounds upon which the case was decided, the long statement of facts contained in the decision being really no part of it, and having no business there, we are probably justified in treating these exceptions to what the defendant calls conclusions of law as an exception to the whole decision, so that there is before the court upon this appeal all the questions of fact and law which were before the court below on the trial. The difficulty has arisen by the form of the decision, which gives a long and detailed statement of the facts, not contemplated by the provisions of the Code allowing the court to file a decision stating concisely the grounds upon which the issues have been decided.

The first question presented is whether the evidence justified the finding that all the consideration paid for the purchase of the premises by the committee was out of the moneys of the lunatic, Charles Preiss.

The evidence to sustain this finding was mainly that of one Henry Storm, the husband of one of the plaintiffs, who is a sister of Charles Preiss. He testified that he took Charles Preiss to the lunatic asylum about March 31, 1880; that Caroline Preiss, prior to her marriage with him, was a dressmaker, and that after her marriage she helped her husband in his business, which was that of a saloon keeper; that he had a conversation with the decedent and his wife, in which it was stated, by whom it does not appear, that they had saved quite a little money, and that the decedent wanted to know how much it took to start a cigar store, but that the witness declined to advise him on the subject. Three saving bank accounts were then introduced in evidence, one in the name of Caroline Preiss in the German Savings Bank, one in the same bank in account with Charles Preiss, the lunatic, and one in the Dry Dock Savings Bank in the name of Charles Preiss, the lunatic. The account in the Dry Dock Savings Bank shows a balance on May 2, 1879, of $1,081; and of this $900 was drawn out in May and June, 1879, before the decedent had been declared a lunatic; and a balance of $190.14 was withdrawn on March 13, 1880, which would appear to be after the appointment of the committee, she having been appointed on the 28th day of February, 1880. The account in the German Savings Bank in the name of Charles Preiss showed a balance of $459.14, $400 of which was transferred in May, 1880, to the individual account of the committee. It thus appears from these savings bank books that the committee received from the estate of the lunatic, after she was appointed committee, $649.28. The witness also testified that the committee sold the saloon in which the business was conducted, for which she received $1,200, and that she also received, as committee of her husband, certain pension moneys that were paid to him by the government of the United States,—in the year 1881, $450, and in the year 1882, $600. This made an aggregate amount of $3,899.28. There was also evidence that the committee had received about $2,200 for back pensions. The witness further testified as to a conversation he had with Caroline Preiss, the committee, after she had received this money, as to the best way to invest the money she had got from the accumulations of Charles Preiss, and the witness told her she had better deposit the money with the firm of which he was a member; and that in pursuance of that advice she deposited with that firm $4,000, and that subsequently the witness advised her to purchase the house in question, and to complete such purchase the witness' firm gave to the committee two checks, one for $200, which appears to have been paid upon the execution of the contract to purchase the house, and the other check for $3,750, which paid the balance of the consideration for the purchase of the premises in question. Witness further testified that after the decedent had been declared a lunatic his wife resumed the dressmaking business, and conducted the same up to the time of her death; that he knew that the committee after she went into possession of those premises spent a large amount for repairs; and that before the title was finally passed she had about $5,000 invested in the property. On behalf of the defendant it was proved that Caroline Preiss, prior to her marriage, had conducted a dressmaking

business for from one and a half to two years; that she had a first-class establishment, and had numerous customers; that after her marriage she continued the dressmaking business down to the time that her husband was taken to the lunatic asylum; and that after that time she still continued the business, and had several assistants in her employ, and apparently did a prosperous business. At the time that the decedent was taken to the insane asylum he had a son living, who died before his father. There was also introduced in evidence an account of this committee of the lunatic presented to the supreme court in a proceeding instituted by the court to compel the committee to account. In that account the committee charges herself with all moneys received as said committee, including the pensions, and credits herself with amounts paid out during the period in question, up to the time of the purchase of the house. From that account it would appear that the committee had received from the estate of the lunatic prior to the 1st of January, 1883, the sum of $5,158, and that she had paid out for the support of the lunatic and his family during that period (less the amount of $1,000, which she claims to have paid to herself for money loaned to the lunatic prior to the time he became incompetent) $4,166.47, leaving in her hands on the 1st of June, 1893, the sum of $981.53. This account was passed upon and approved by the referee appointed by the supreme court, and the report of the referee approving this account was confirmed by the court. It is not disputed that up to this time the committee supported the lunatic in the asylum, and also herself and her son.

As this accounting was not upon notice to these plaintiffs, it cannot bind them as an adjudication. It was, however, competent evidence to be considered in determining this question in relation to the particular money used in the purchase of this property. The fact that this money so used was money entirely realized from the estate of her husband depends solely upon the evidence of Mr. Storm, the husband of one of the plaintiffs. The account from the German Savings Bank introduced by the plaintiffs shows that on the 10th day of February, 1882, she drew $4,000 from that bank, and that was undoubtedly the $4,000 that was deposited with Mr. Storm's firm. That amount taken from the savings bank account of the wife was not directly connected with the money of the husband. All of the husband's money that was shown to have gone into that account was the balance transferred from the account of the lunatic of the sum of $400. There is nothing to show that the balance of the money in this bank was the money of the lunatic. It may be surmised that the amount in this savings bank of $2,193.80, deposited on March 23, 1881, was the arrears of the pension drawn by the committee, but there is no evidence of that fact. And in view of the evidence that during this period, from the time that her husband was declared a lunatic down to the 1st of January, 1880, she had, out of the moneys received by her, supported him in the lunatic asylum, and his child and herself, there certainly cannot have been as much money that she had received as committee in her hands at the time that this purchase was made.

To entitle the plaintiffs to maintain this action, which is to have a resulting trust declared of this property, so that the property itself belonged to the husband, and not to the wife, the plaintiffs must prove, by a fair preponderance of evidence, that all of the consideration applied to the purchase of this property was the money of the husband. Schierloh v. Schierloh, 148 N. Y. 103, 42 N. E. 409; Bryant v. Allen, 54 App. Div. 500, 67 N. Y. Supp. 89. It will not do that part of this consideration paid for the property was the money of the husband, but there must be a fair presumption from the evidence that all of the money used was his money. In view of the testimony as it stands, I do not think that the plaintiffs can be said to have proved that fact. Mr. Storm's recollection of the conversation happening 20 years before he testified is consistent with the fact that this money was the united savings of the husband and wife, as she at that time made no distinction between them. She and her son, in the absence of a will, were entitled to this property upon the death of her husband. In the conversations between the husband and wife as to the investment of their savings, the money was spoken of as their joint savings, and not as the property of the husband only. The evidence would seem to disclose that the wife had supported herself by dressmaking before her marriage; that she assisted her husband in his business before he was declared a lunatic, and up to that time had a bank account of her own, in which she made deposits of money, and after that business had been given up resumed her dressmaking; and there is nothing to justify the presumption that the money that was in her possession subsequent to the time of her appointment as committee of her husband was his. The husband had certainly nothing to do with the purchase of this property. It was purchased and paid for by the wife, and the title taken in her own name, with the knowledge of Mr. Storm, and with no protest from him. There was evidently no intent to defraud the husband or his estate, and from the whole case I do not think that the evidence supports the finding that the money used in the purchase of this property, or the $4,000 deposited with Mr. Storm's firm, was the money of the lunatic Charles Preiss.

There are several other questions presented by this record which it is unnecessary to discuss, as we disagree with the court below on this crucial question of fact. The evidence of the declaration of the decedent's husband, as against the defendants, was certainly not competent evidence; and whether or not the declarations of the committee, made long after the transaction, are competent evidence against these defendants, is at least a doubtful question; but we think, upon the evidence as it stands, the finding of the court below was not justified, and that the judgment should therefore be reversed, and a new trial ordered, with costs to the appellants to abide the event. All concur.